IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,907






EX PARTE ROBERT JAMES CAMPBELL








ON APPLICATION FOR POST-CONVICTION WRIT OF HABEAS CORPUS


FROM CAUSE NO. 586190-D IN THE 232NDJUDICIAL DISTRICT COURT


HARRIS COUNTY





 Per Curiam. Alcala, J., filed a concurring opinion in which Johnson, J.,
joined.


O P I N I O N



 This is a subsequent application for a writ of habeas corpus filed pursuant to the
provisions of Texas Code of Criminal Procedure Article 11.071 § 5.

 In May 1992, a jury found applicant guilty of the offense of capital murder. The jury
answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article
37.071, and the trial court, accordingly, set applicant's punishment at death. This Court
affirmed applicant's conviction and sentence on direct appeal. Campbell v. State, 910
S.W.2d 475 (Tex. Crim. App. 1995). Applicant filed his initial post-conviction application
for a writ of habeas corpus in the convicting court on April 23, 1997. This Court denied
applicant relief. Ex parte Campbell, No. WR-44,551-01 (Tex Crim. App. Mar. 8, 2000)(not
designated for publication). Application filed his first subsequent application in the trial
court on May 28, 2003, in which he asserted that his execution would violate the Eighth
Amendment because he was mentally retarded and that the jury should have determined the
issue of mental retardation. This Court dismissed applicant's first subsequent application. 
Ex parte Campbell, No. WR-44,551-02 (Tex. Crim. App. July 2, 2003)(not designated for
publication). In his second subsequent habeas application, which was filed in the trial court
on August 14, 2006, applicant raised Brady and actual innocence claims. This Court
dismissed that application on April 25, 2007. Ex parte Campbell, 226 S.W.3d 418 (Tex.
Crim. App. 2007). The instant application was filed in the trial court on September 5, 2012.

 Applicant presents a single allegation in the instant application in which he asserts that
he is "entitled to relief from his death sentence because he presented significant mitigating
evidence related to his moral culpability and the appropriateness of a death sentence that
could not have been given full effect by the sentencing jury." Because the law has further
developed since applicant filed his last habeas application, we have filed and set this claim.

 In Ex parte Smith, this Court explained:

 The United States Supreme Court has established two key principles
that guide the process by which a jury may assess the death penalty. First,
while the death penalty is not per se cruel and unusual punishment in violation
of the Eighth Amendment, a jury's discretion to assess the death penalty "must
be suitably directed and limited so as to minimize the risk of wholly arbitrary
and capricious action." Second, the jury must be provided a vehicle by which
to fully consider and give effect to mitigating evidence of "the character and
record of the individual offender and the circumstances of the offense."

 

 With respect to the second principle, the Supreme Court has held that
the mitigating evidence must first be relevant. Relevant evidence in this
context is "evidence which tends logically to prove or disprove some fact or
circumstance which a fact-finder could reasonably deem to have mitigating
value." A vehicle need not be provided when the evidence has "only a tenuous
connection-'some arguable relevance'-to the defendant's culpability," but
only when the evidence "may have meaningful relevance to the defendant's
moral culpability 'beyond the scope of the special issues.'" [Abdul-Kabir v.
Quarterman, 550 U.S. 233, 253 n. 14 (2007).] Once this "low threshold for
relevance" is met, the jury must be provided an adequate vehicle by which to
fully consider and give effect to the evidence.


 At the time [Smith] was sentenced, the jury was required to answer
special issues of deliberateness, future dangerousness, and, if raised by the
evidence, provocation. The Supreme Court found that these special issues
adequately directed and limited the jury's discretion. But if a defendant
presented relevant mitigating evidence that was outside the scope of the
special issues, or that had an aggravating effect when considered within the
scope of the special issues, the special issues were a constitutionally
inadequate vehicle for the jury to fully consider and give effect to the
mitigating evidence.


(Footnotes omitted.) Smith, 309 S.W.3d 53, 55-6 (Tex. Crim. App. 2010). As in the Smith
case, applicant's jury was required to answer special issues of deliberateness, future
dangerousness, and, if raised by the evidence, provocation. However, unlike the mitigation
evidence presented in Smith, the evidence in the instant case is not two-edged. 

 In his writ application, applicant asserts that he is entitled to a new punishment trial
because the jury did not have a vehicle by which it could give effect to his mitigating
evidence. Specifically, applicant asserts that his jury could not give effect to his evidence
of youth, "childhood poverty," "physical mistreatment," "family violence," "problems in
school," "emotional isolation and rejection," and "the destructive influence of falling in with
'the wrong crowd.'" 

 The evidence presented at trial did show that applicant was 18 at the time he
committed this crime. However, several cases have held that youth can be given effect when
answering the future dangerousness issue. And the remainder of what counsel describes as
"evidence" is not supported by the record. The testimony at trial showed that applicant's
parents were together until about ten months before the trial on this offense, and his mother
testified that they had a good relationship. His mother admitted that she and applicant's
father did occasionally argue in applicant's presence, and she did admit that he hit her on at
least one occasion, but this questioning was superficial and did not delve into anything
deeper than these basic facts. Applicant's mother also admitted that applicant was
disciplined with a belt on the apparently rare occasion that he would get in trouble, and she
admitted that at one point they moved several times in a few months because she "couldn't
afford the rent." But again, this questioning was superficial, and applicant did not delve into
the reasoning behind the statements. Finally, testimony showed that applicant did yard work
with friends, went to church, played baseball and basketball, and sang in a church choir. 
And, although applicant's troubles began the year before he was convicted of the instant
offense, the members of the "wrong crowd" that supposedly influenced him had been his
friends for years prior to the current trouble. 

 Despite applicant's attempt in his habeas pleadings to re-characterize the testimony,
the actual record evidence presented at trial was not outside the scope of the special issues
given, nor did it have an aggravating effect when considered within the scope of the special
issues. Thus, applicant was not constitutionally entitled to a separate jury instruction at the
punishment phase of trial. See, e.g., Penry v. Lynaugh, 492 U.S. 302 (1989), and Ex parte
Jones, No. AP-75,896 (Tex. Crim. App. June 10, 2009)(not designated for
publication)(holding that youth and positive personal characteristics are the sorts of evidence
that can be considered within the scope of the former special issues - no Penry issue
required). Accordingly, the relief applicant seeks is denied. 


Delivered: November 7, 2012

Do Not Publish